**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amelia Finley, | No. CV-14-02609-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County Sheriff's Office, et al., | |
| Defendants. | |

Before the Court is Defendants Gerlach, Fax, Osborn, and Anderson's Motion for Summary Judgment. (Doc. 90.) The motion is fully briefed.[1] For the following reasons, Defendants' motion is granted.

## BACKGROUND

On December 16, 2013, detectives from the Maricopa County Sherriff's Office ("MCSO") were surveilling Plaintiff Amelia Finley's apartment because they had received a tip that her nephew, Joseph Lee Gonzales, might be hiding there. (Doc. 91,

---

[1] On February 8, 2016, Plaintiff filed an unauthorized sur-reply, which the Court struck *sua sponte*. (Docs. 97-99.) Plaintiff later moved for leave to file a sur-reply. (Doc. 100.) As the Court previously explained, sur-replies are highly disfavored and permitted only in extraordinary circumstances. Plaintiff has not shown such extraordinary circumstances exist. She claims that her sur-reply is necessary to respond to new arguments raised by Defendants in their reply, but the Court has reviewed Defendants' reply and finds that it raises no new arguments beyond those presented in their initial motion. Moreover, the Court has reviewed Plaintiff's proposed sur-reply and finds that it merely reiterates arguments made in her response brief. Plaintiff's proposed sur-reply is neither appropriate nor helpful. Therefore, Plaintiff's motion for leave to file a sur-reply is denied.

Ex. 3.) Gonzales was wanted for a murder that had occurred two days prior.[2] (*Id.*, Ex. 2.) Around 1:00 PM, non-party Detective Felix observed an individual who he believed matched Gonzales' general description exit Plaintiff's apartment and enter a taxi. (*Id.*, Ex. 3; Doc. 94, ¶ 14.) Detective Felix radioed this information to dispatch, describing the individual as a black person dressed in tan shorts, a dark color t-shirt, and possibly a hooded sweatshirt. (Doc. 91, Ex. 3.)

Detectives Anderson, Osborn, and Gerlach responded to Detective Felix's radio dispatch and followed the taxi. (*Id.*) Detective Anderson attempted to verify the passenger's identity through the taxi windows, but was unsuccessful because they were tinted. (*Id.*, Exs. 3, 7-10.) When the taxi reached its destination, Detectives Gerlach and Osborn surrounded the taxi with their guns drawn and ordered the occupants to exit the vehicle with their hands up and lie face down on the ground. (*Id.*, Exs. 3, 8, 9; Doc. 94, ¶¶ 17-18.)

Although the parties dispute some of the details of what occurred next,[3] they generally agree about how the encounter unfolded. For example, Defendants assert that Plaintiff hesitated to exit the taxi and began screaming profanities at them; Plaintiff insists that she exited the taxi "without a word uttered." (*Id.*) They agree, however, that Plaintiff complied with Defendants' demands to lie face down on the ground. (*Id.*) Detective Gerlach approached Plaintiff and handcuffed her. (Doc. 91, Exs. 3, 9; Doc. 94, ¶ 21.) Detective Gerlach contends that he helped Plaintiff to a sitting position, but Plaintiff claims that he "tossed her on her back." (Doc. 91, Exs. 3, 9; Doc. 94, ¶ 23.) At this point, Detective Gerlach discovered that Plaintiff was not Gonzales. (Doc. 91, Exs. 3, 9.) When asked, Plaintiff identified herself as Amelia Finley. (*Id.*, Ex. 3; Doc. 94, ¶ 24.) Detective Gerlach asserts that he removed Plaintiff's handcuffs shortly after she

---

[2] Gonzales eventually was apprehended, pled guilty to second-degree murder, and now is serving a 20-year sentence in the Arizona Department of Corrections. (Doc. 91, Ex. 2.)

[3] These minute factual disputes are not material to the resolution of this case.

identified herself; Plaintiff claims that "a lot of time had passed" before they were removed. (Doc. 91, Exs. 3, 9; Doc. 94, ¶¶ 27-28.)

After discovering that Plaintiff was not Gonzales, Defendants questioned her about her relationship to Gonzales and her knowledge of his whereabouts. (Doc. 91, Exs. 3, 9; Doc. 94, ¶¶ 29-35.) Defendants contend that Plaintiff became increasingly angry and continued to shout profanities at them. (Doc. 91, Exs. 3, 9.) Plaintiff asserts that Defendants told her Gonzales was a member of a drug cartel that would "go after his family until they found him," which Plaintiff interpreted as a threat to her safety. (Doc. 94, ¶¶ 31-34.) Plaintiff denied knowledge of Gonzales' whereabouts and the murder, and was released. (Doc. 91, Ex. 3; Doc. 94, ¶¶ 35-36.)

A few minutes later, Plaintiff returned to the scene and demanded Defendants' names and badge numbers. (Doc. 91, Exs. 3, 7, 10; Doc. 94, ¶ 57.) Defendants gave her the information and resumed questioning her about Gonzales. (Doc. 91, Ex. 3; Doc. 94, ¶ 58.) Plaintiff revealed that she had heard rumors about the homicide, attempted to contact Gonzales via social media, and received a phone call from him. (Doc. 91, Ex. 3; Doc. 94, ¶¶ 59-60.) She then left the scene and did not return. (Doc. 91, Ex. 3; Doc. 94, ¶ 62.)

Plaintiff alleges that Defendants infringed her Fourth Amendment and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 by falsely arresting her and using excessive force to detain her.[4] (Doc. 10, ¶¶ 17-20.) As a result of the incident, Plaintiff claims that she has experienced fear, paranoia, emotional distress, and mental anguish, all exacerbated by the fact that she was already suffering from PTSD. (Doc. 94, ¶¶ 63-70.) Defendants move for summary judgment on all claims. (Doc. 90.)

---

[4] Although Plaintiff's amended complaint states that she "has a claim for assault due to the police officers forcing her to the ground," (Doc. 10, ¶ 3), it does not appear that she is pursuing a separate state law tort claim independent of her claims under 42 U.S.C. § 1983. Her amended complaint alleges only two claims, each for violations of § 1983, and no party mentions the existence of a state law assault claim in their summary judgment briefs.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## DISCUSSION

Section 1983 provides a cause of action for persons who have been deprived of their constitutional rights by persons acting under color of law. 42 U.S.C. § 1983. It is a mechanism "for vindicating federal rights elsewhere conferred," and "is not itself a source of substantive rights." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotations omitted). To succeed on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff alleges that Defendants violated her Fourth and Fourteenth Amendment rights by falsely arresting her and using excessive force during the encounter.

**I. Detectives Fax & Anderson**

Preliminarily, "[l]iability under section 1983 arises only upon a showing of

personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Detectives Fax and Anderson did not participate in the stop and detainment of Plaintiff. The record indicates that both arrived some time afterward. (Doc. 91, Exs. 3, 7-10.) Because Plaintiff provides no evidence that Detectives Fax and Anderson participated in the stop or detainment, Plaintiff's claims against them fail as a matter of law.

**II. False Arrest**

A false arrest is one that is done without probable cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Probable cause to arrest exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802-03 (1971) (internal quotations omitted). Indeed, "[w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." *Torres v. City of L.A.*, 548 F.3d 1197, 1212 (9th Cir. 2008) (internal quotations omitted). But "this in no way negates a police officer's duty to reasonably inquire or investigate these reported facts." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1293 n.16 (9th Cir. 1999).

Plaintiff does not dispute that Defendants had probable cause to arrest Gonzales. Indeed, a witness to the shooting identified him as the shooter, and the police had a warrant for his arrest. (Doc. 91, Ex. 1.) Thus, the issue is whether Detectives Osborn and Gerlach reasonably mistook Plaintiff for Gonzales. On these facts, a reasonable jury could only conclude that Defendants' mistake was reasonable based on the information known to them at the time. They received information from a fellow detective that an individual matching Gonzales' description had left the apartment that was under

- 5 -

1  surveillance. Defendants unsuccessfully attempted to ascertain Plaintiff's identity before the taxi reached its destination. Considering a dangerous homicide suspect was the subject of the arrest warrant and dispatch report, Defendants' decision to detain Plaintiff until they could confirm her identity and question her about her connection to Gonzales was reasonable. Under these circumstances, no reasonable jury could conclude that Plaintiff's temporary detention was unlawful. *See Hill*, 401 U.S. at 802-03.

**III. Excessive Force**

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The operative question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Analyzing a Fourth Amendment excessive force claim requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). Traditionally, this balancing is conducted in three steps. First, a court evaluates "the type and amount of force inflicted." *Espinosa v. City and Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (internal quotations omitted). Second, the court considers the government's interest in using force, relying on factors such as "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting escape." *Id.* The court then "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion . . . ." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).

There is no issue of material fact as to the type and amount of force that Detectives Gerlach and Osborn inflicted on Plaintiff. After surrounding her taxi, Defendants drew their weapons and ordered Plaintiff to exit the vehicle and lie face down on the ground. They kept their weapons directed at Plaintiff until Detective Gerlach placed her in

- 6 -

1 handcuffs, and they removed the handcuffs after verifying Plaintiff's identity and
2 relationship to Gonzales. Although Plaintiff claims that "a long time had passed" until
3 the handcuffs were removed, this vague assertion is not enough to create an issue of
4 material fact. Plaintiff admitted that she complied with Defendants' orders. They did not
5 force her to the ground, handcuff her wrists too tight, or otherwise injure her person. *Cf.*
6 *Larez v. City of L.A.*, 946 F.2d 630, 634 (9th Cir. 1991) (officer used excessive force
7 when he kicked plaintiff and smashed his face into the floor); *LaLonde v. Cty. of*
8 *Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (whether officer used excessive force was
9 triable issue of fact because plaintiff alleged the handcuffs cut off circulation to his
10 wrists); *Martinez-Rodriguez v. United States*, 375 F. App'x 743, 744 (9th Cir. 2010)
11 (whether officer used excessive force was triable issue of fact because he broke three of
12 the plaintiff's fingers). Indeed, Plaintiff does not allege that she suffered *any* physical
13 injuries as a result of the encounter. Instead, she claims that she was embarrassed by the
14 situation and emotionally distressed by the thought of being targeted by a drug cartel.
15 (Doc. 94, ¶¶ 63-69.) On these facts, a reasonable jury could only conclude that
16 Defendants did not use excessive force in detaining Plaintiff.

## **CONCLUSION**

18 For the foregoing reasons, a reasonable jury could only conclude, based on the
19 undisputed material facts, that Defendants' actions were objectively reasonable under the
20 circumstances. Accordingly,

21 **IT IS ORDERED** that Plaintiff's motion for leave to file a sur-reply, (Doc. 100),
22 is **DENIED**.

23 //
24 //
25 //
26 //
27 //
28 //

- 7 -

1 **IT IS FURTHER ORDERED** that Defendants Gerlach, Fax, Osborn and Anderson's Motion for Summary Judgment, (Doc. 90), is **GRANTED**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 26th day of February, 2016.

Douglas L. Rayes
United States District Judge